HAMMOND *v*. CITY OF DETROIT.

GOVERNMENT ROAD—LOCATION.

>On a review of the evidence, the "River Road," so called, in Detroit, as surveyed by the city authorities, is found to be coincident with a 66-foot highway established under act of Congress in 1824.

Cross-appeals from Wayne; Hosmer, J. Submitted December 13, 1901.   Decided January 7, 1902.

Bill by Charles F. Hammond and others against the city of Detroit and Henry Frederick to restrain an alleged encroachment on complainants' property.   From the decree rendered, both parties appeal.   Reversed and bill dismissed.

*Charles W. Casgrain,* for complainants.

*John W. McGrath,* for defendants.

MONTGOMERY, J.   The bill in this case was filed to restrain the city from encroaching upon the premises of the complainants in grading and paving the street adjacent to complainants' property, known as "River Street."   The bill alleges that complainants are the owners of that part of the west half of private claim No. 78 lying between Woodbridge street, otherwise known as "River Road" or "River Street," and the channel of the Detroit river, except the west 125 feet.   When the bill was filed, the street was already in process of improvement, and at the hearing had been graded and the curb set.   The decree of the circuit court restrained defendants, in effect, from extending the street beyond the curb line, except for purposes of support, practically holding that the curb line, as set, was the street line.   Both parties have appealed to this court.

It appears that, as early as 1824, Congress passed an act authorizing the surveying and making of a road from

a point in the northwestern boundary of the State of Ohio to Detroit, in the then Territory of Michigan.   The president was authorized to appoint three commissioners, who should explore, survey, and mark, in the most eligible course, a road from a point in the northwestern boundary of Ohio to Detroit, and providing that the commissioners should make out accurate plats of such surveys, accompanied with field-notes.   It was further enacted that the road should be opened and made under the direction of the president of the United States, who was authorized to employ the troops of the United States in the completion, or assisting in the completion, of said road.   In November, 1824, the commissioners made their report, accompanied by a map and field-notes, showing a road between the *termini* named in the statute.   This report would appear to have been approved by the president.   The maps show a survey of this highway, giving its width at 66 feet, and the report stated that the width of the contemplated road is marked at 66 feet.   This road appears upon the map between Springwells and Detroit as adjacent to the river, and following the course of the river, in the main.   It is true that it would appear from the location of the road on the map that no part of it was intended to be in the river; but, as was stated by one of the witnesses, it would be necessary to put the road down somewhere on the map, and the surveyor could not very well put it down in the river.

The case turns upon two questions of fact: *First*, whether the road for its entire length is to be deemed a road 66 feet in width; and, *second*, if it is, whether the evidence shows that the highway, as surveyed by the city, is located upon the 66 feet originally contemplated and worked and used for this highway.   There is no evidence of adverse possession by the claimants, or those under whom they claim.   If, therefore, there was a 66-foot street or highway along the margin of the Detroit river, and the *locus in quo* is found to be within the limits of that exist-

ing street, the complainants are not entitled to any part of the relief prayed.

We are well satisfied that the road as laid out was the originally contemplated road provided for in this act of Congress, and that it was a road intended to be 66 feet in width in front of these premises. But, as said by the circuit judge, the map itself does not show where that 66 feet of road was located. That question remains to be determined upon testimony which is more obscure than is desirable. But a careful examination of the record, the testimony of surveyors familiar with the highway for many years, and the fences upon the boundary line, all indicate that the north side of the road was as fixed by the city engineer in providing for these improvements. It is true that all the 66 feet south of this point was not wrought for travel. The best evidence is that the occupied portion came within $4\frac{1}{2}$ feet, or thereabouts, of the present south curb line. But, as the property was presumably the property of the United States in 1824, it was competent for the authorities to locate a road at a point where there may have been shallow water on some portion of it. It would appear from the testimony that the authorities have considered that the southerly portion of this highway at least came fully up to the river bank, as for many years the land between that and the channel of the river was not assessed at all, or considered as property. On the whole, we feel convinced that the best testimony tends to show that this highway of 66 feet was located as the city engineer has attempted to locate it for these improvements, and it follows that the bill of complaint must be dismissed, with costs of both courts.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.